Oliver F. Wood, Esq.
Domenic A. Cossi, Esq.
**WESTERN JUSTICE ASSOCIATES, PLLC**
303 West Mendenhall Street, Suite 1
Bozeman, MT 59715
Ph: (406) 587-1900
Fax:   (406) 587-1901
*oliver@westernjusticelaw.com*
*domenic@westernjusticelaw.com*

*Attorneys for Plaintiffs*



GALLATIN COUNTY CLERK
OF DISTRICT COURT

2021 MAR 16  PM 1: 37

FILED

BY_____DEPUTY

MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT
GALLATIN COUNTY

| REBECCA MCNEIL,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN HEALTHCARE MINISTRIES, INC. and JOHN DOES 1-5.<br><br>Defendant. | Cause No. DV-21-226A<br><br>**AMENDED COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL** |
|---|---|

The Plaintiff, Rebecca McNeil, alleges as follows in support of her claim against the Defendant.

### I. PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff, Rebecca McNeil, is and has been, at all times pertinent to this action, a resident of Gallatin County, Montana.

2. Defendant, Christian Healthcare Ministries, Inc. is an insurance company that does business in Montana and whose statutory home is located in Barberton, Ohio.

3. Defendants John Does are persons or entities, unknown to Plaintiff at this time, that may be liable to Plaintiff for the damages and other relief sought in this Complaint.

EXHIBIT A

4. This Court has jurisdiction over the subject matter and parties to this complaint because the damages complained of occurred in Gallatin County.

5. Pursuant to §§ 25-2-121 and 25-2-122, MCA, venue properly lies in Montana's Eighteenth Judicial District.

## II. GENERAL ALLEGATIONS

6. Rebecca McNeil was a member of the Christian Healthcare Ministries, Inc. beginning in 2017, paying $150 per month as a premium.

7. On October 8, 2019, Plaintiff was struck by an automobile while crossing Bridger Drive in Bozeman, Montana while on her bicycle. Just before the collision, Plaintiff was stopped on a bicycle path waiting to cross Bridger Drive with her mother. As the two cyclists crossed Bridger Drive in the crosswalk with Plaintiff's mother in front, a vehicle traveling quickly in the eastbound lane struck Plaintiff.

8. Plaintiff suffered extensive injuries as a result of the October 8, 2019 collision.

9. Plaintiff has incurred hundreds of thousands of dollars in medical expenses as a result of the October 8, 2019 collision.

10. In March, April and July 20, 2020, Plaintiff sent a letter to Defendant requesting reimbursement for medical bills.

11. Defendant responded to Plaintiff that "CHM's Guidelines N.2(a-e) state that CHM is secondary to any other payment source." CHM refused to pay for any of Plaintiff's medical bills.

12. Defendant asserts that it is not an insurance company. However, despite what Defendant claims, Defendant operates as an insurance company in Montana while calling itself a

Christian healthcare cost sharing ministry to avoid being regulated by the Montana insurance code.

13.     Defendant has different health insurance policies depending on premiums paid by its insured.

14.     Plaintiff contracted through Defendant for its "Gold level monthly financial gift" policy (hereinafter, "premium."). As a part of Plaintiff's policy benefits, members receive "assistance up to $125,000 per illness." Specifically, "CHM shares 100 percent of bills for any medical incident exceeding $500 (before discounts) as long as all other Guidelines are met."

15.     The amount of coverage Plaintiff received depended on her monthly premium to Defendant.

16.     Defendant ceased coverage of Plaintiff when she stopped paying her monthly premium.

17.     Defendant applies specific conditions for whether it will cover certain treatments, including payment for pre-existing conditions such as pregnancy and congenital conditions.

18.     Contrary to Montana law, Defendant engaged in early subrogation when it refused to pay any benefits related to the collision due to the availability of Medicaid and auto insurance.

19.     Plaintiff's total damages far exceeded the amount insurance coverage available to her.

20.     Montana law makes clear that subrogation of health insurance benefits in Montana is void against public policy.

21.     Montana law has also long been clear that an "an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to

the contrary." *Swanson v. Hartford Ins. Co. of Midwest*, 2002 MT 81, ¶ 14, 309 Mont. 269, 46 P.3d 584. *See, also, Skauge v. Mountain States Tel. and Tel. Co.*, 172 Mont. 521, 565 P.2d 628 (1977).

22. Defendant's policies, outlined in its Guidelines, state that "CHM shall have discretionary authority to interpret the terms and conditions of the Subrogation and Reimbursement provisions and make determinations or construction. . . ." Moreover, the Guidelines go on to explain that "CHM's right to subrogation will apply even if you have not been made whole, or are not fully compensated or only partially recover from another person for your injuries."

23. Contrary to Montana law, Defendant subrogated Plaintiff's medical bills without first conducting a made whole analysis.

24. As a result of Defendant's actions, Plaintiff suffered damages including, but not limited to, the wrongful denial of benefits, interest, loss of use of money, emotional distress, attorney fees and costs and other compensatory damages.

### III. LEGAL CLAIMS FOR RELIEF

### COUNT ONE–BREACH OF CONTRACT

25. All allegations asserted in this Complaint are incorporated herein by reference. The allegations in this Count support the claims of the named Plaintiff.

26. Defendant's contract contains illegal provisions that purport to provide Defendant with a right of subrogation with respect to Plaintiff's medical payments coverages.

27. Courts in Montana "will not enforce" illegal contract provisions. *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 56, 341 Mont. 33, 174 P.3d

948; *Fenwick v. State, Dep't of Military Affairs, Disaster & Emergency Servs. Div.*, 2016 MT 80, ¶ 16, 383 Mont. 151, 369 P.3d 1011.

28. Montana law has long been clear that "subrogation of medical payment benefits in Montana is void against public policy." *Youngblood v. American States Ins. Co.*, 262 Mont. 391, 400, 866 P.2d 203, 208 (1993). *See, also, Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 628 P.2d 667 (1981); *Scheafer v. Safeco Ins. Co.*, 2014 MT 73, ¶ 27, 374 Mont. 278, 320 P.3d 967. Montana law has also long been clear that an "an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to the contrary." *Swanson v. Hartford Ins. Co. of Midwest*, 2002 MT 81, ¶ 14, 309 Mont. 269, 46 P.3d 584. *See, also, Skauge v. Mountain States Tel. and Tel. Co.*, 172 Mont. 521, 565 P.2d 628 (1977).

29. Pursuant to Defendant's contractual promise to Plaintiff in their health insurance policies that such policies will conform to the minimum requirements of Montana law, Defendant breached their contractual promise when it stated that: "CHM's subrogation right has first priority to any recovery and takes priority over the injured party, their attorney or any other person or entity with a claim, right, or lien upon the recovery."

30. Defendant also breached their contractual promise under Montana law that Defendant would not subrogate until Plaintiff was made whole.

31. Defendant's breach of contract is a substantial factor in causing Plaintiff's damages.

EXHIBIT A

## COUNT TWO–INSURANCE BAD FAITH

32. All allegations asserted in this Complaint are incorporated herein by reference. The allegations in this Count support the claims of the named Plaintiff.

33. In their dealings with the Plaintiff, Defendants unreasonably breached their statutory duties under the Montana Unfair Claims Settlement Practices Act by violating § 33-18-201, *et seq.*, MCA, which provides, *inter alia*, that an insurer may not:

> (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;
> …
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;
>
> (5) fail to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

§ 33-18-201 (1), (4)-(5), MCA.

34. In its dealings with Plaintiff, Defendant breached its statutory duties under § 33-18-201 (1), (4)-(5) by, *inter alia*, attempting advanced subrogation without conducting a made whole analysis, expressly failing to adhere to the Made Whole Doctrine, and denying Plaintiff's claim without conducting a reasonable investigation.

35. As a direct and proximate result of Defendant's violations of the above referenced statute, Plaintiff suffered damages as alleged herein.

## COUNT THREE – DECLARATORY JUDGMENT

36. All allegations asserted in this Complaint are incorporated herein by reference. The allegations in this Count support the claims of the named Plaintiff.

*Amended Complaint for Damages and Request for Jury Trial*   Page 6

EXHIBIT A

37. Plaintiff and Defendant are parties whose rights and legal obligations are affected by Montana's Made Whole Doctrine. Plaintiff is entitled to seek a declaratory ruling pursuant to MCA § 27-8-201, *et seq.*

38. Plaintiff is entitled to a declaratory ruling that Defendant is considered an insurance company and thus subject to Montana's insurance code and jurisprudence.

39. Plaintiff is also entitled to a declaratory ruling that Defendant may not subrogate until Plaintiff has been made whole. Similarly, Plaintiff is also entitled to a declaratory ruling that Defendant is obligated to pay for medical expenses not excluded for some other legitimate reason, irrespective of Defendant's efforts to subrogate.

40. Plaintiff is entitled to a declaratory ruling that Defendant is required to pay medical bills that it has failed to pay, based on its efforts to subrogate before she has been made whole and without conducting a made whole analysis.

41. Plaintiff is entitled, *inter alia*, to statutory interest, reasonable attorneys' fees, and costs of suit.

### IV. CLAIMS FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

1. For an order declaring Defendant an insurance company and enjoining Defendant from continuing to subrogate the benefits of Plaintiff contrary to Montana law;

2. For an order directing Defendant to pay all of Plaintiff's expenses Defendant claimed it did not owe, up until Plaintiff is made whole;

3. For an order directing Defendant to pay interest on insurance benefits improperly withheld by Defendant based on its improper subrogation;

4. For all other compensatory damages to be proven at the time of trial, in an amount sufficient to return Plaintiff to the position she would have attained absent Defendant's wrongdoing;

5. For a reasonable sum of money to compensate Plaintiff for attorneys' fees and costs incurred incident to the prosecution of this claim, pursuant to the Common Fund Doctrine; Private Attorney General Doctrine; the insurance exception to the American Rule; the Declaratory Judgment Act, and any other applicable law;

6. For punitive damages in an amount sufficient to deter and serve as an example to other insurance companies and agencies not to engage in similar conduct;

7. For injunctive relief requiring Defendant to halt all operations in Montana until it complies with the insurance code; and

8. For other such relief as the Court deems just, necessary and proper.

## V. REQUEST FOR JURY TRIAL

The Plaintiff requests that all issues of fact so triable be determined by a twelve-person jury.

DATED this 16th day of March, 2021.

WESTERN JUSTICE ASSOCIATES, PLLC

_____

Oliver F. Wood, Esq.
Domenic A. Cossi, Esq.
*Attorneys for Plaintiff*